IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAVID L. JOHNSON, )
                                 )
     Plaintiff, )
                                 )
                                 )     CIV-09-119-F
v. )
                                 )
MICHAEL J. ASTRUE, )
  Commissioner of Social Security )
    Administration, )
                                 )
     Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his applications with the agency on October 18, 2005. (TR 63-65, 302-

305). In his applications, Plaintiff alleged that he became unable to work on October 14, 2005, due to triple bypass heart surgery, asthma, emphysema, and narcolepsy. (TR 87-88). Plaintiff stated that he stopped working in October 2005 when he was terminated from his position as a trucker due to his narcolepsy and the medication prescribed for this condition. (TR 88). Plaintiff also stated that he had completed the eighth grade, previously worked as a truck driver, truck loader, stocker, painter, muffler installer, and property maintenance worker, and that he had an additional vision impairment due to a glaucoma filter in his right eye. (TR 87-88, 94). Plaintiff estimated he could walk ½ block, lift or carry ten pounds, sit 10 to 15 minutes, stand 20 minutes, and occasionally bend over. (TR 116-117). He described falling asleep during all activities and stated his narcolepsy medication helped but did not eliminate instances of "falling asleep without warning or plan." (TR 118).

Plaintiff's applications were denied on initial and reconsideration reviews. (TR 39, 40, 306, 307). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ") on February 12, 2008, at which Plaintiff and a vocational expert ("VE") testified. (TR 312-326). At the hearing, Plaintiff testified that he was 42 years old, that he began having narcolepsy symptoms following his 2004 heart surgery, that he had been involved in four automobile accidents due to falling asleep while driving, that he no longer drives, and that he still falls asleep without warning two to three times per day despite his narcolepsy medication. The ALJ subsequently issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 16-26). The Appeals Council declined Plaintiff's request to review this administrative decision. (TR

5-7). Plaintiff now seeks judicial review of the final decision of Defendant Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2009); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail).

III. ALJ's Decision

Following the requisite sequential analysis, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 14, 2005. At step two, the ALJ found that Plaintiff had severe impairments due to a history of coronary artery disease, narcolepsy sometimes several times per day (treated with medication), and emphysema. At the third step, the ALJ found that Plaintiff's impairments, considered individually or in combination, did not satisfy or equal the medical requirements of one or more of the impairments described in the agency's Listing of Impairments.

At step four, the ALJ summarized the medical evidence and Plaintiff's subjective statements concerning his impairments and limitations caused by his impairments. With respect to the issue of credibility, the ALJ found that Plaintiff's subjective statements were not consistent with the medical evidence or with Plaintiff's statements concerning his usual daily activities. (TR 22-23). The ALJ concluded that Plaintiff had the RFC to perform a wide range of sedentary work not involving exposure to unprotected heights or dangerous machinery. Relying on the VE's testimony concerning the exertional requirements of Plaintiff's previous jobs as a truck driver, concrete truck driver, and muffler installer, the ALJ

4

found that Plaintiff was unable to perform his previous jobs in light of his RFC for work. Based on Plaintiff's vocational characteristics, including his limited education and RFC, the ALJ found at step five that Plaintiff retained the capacity to perform jobs available in the economy, including the jobs of surveillance system monitor, bench assembler, and order clerk, as those jobs were described by the VE at the hearing. (TR 24-25). In light of these findings, the ALJ concluded Plaintiff was not entitled to benefits.

IV. <u>Step Four - RFC Finding</u>

Plaintiff contends that the ALJ's RFC finding did not include consideration of all of Plaintiff's medically determinable impairments. Specifically, Plaintiff contends that the ALJ should have considered the impact of Plaintiff's visual impairment, along with his other impairments, in determining his RFC for work. At the fourth step of the evaluation process required of administrative factfinders, the ALJ is required to determine whether the claimant retains the residual functional capacity ("RFC") to perform the requirements of the claimant's past relevant work. At this step, the claimant bears the burden of proving an inability to perform the requirements of the claimant's past relevant work. See <u>Andrade v. Secretary of Health & Human Servs.</u>, 985 F.2d 1045, 1051 (10th Cir. 1993). In making this determination, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." <u>Henrie v. United States Dep't of Health & Human Servs.</u>, 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's

5

subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

      The ALJ found that Plaintiff had the RFC to perform work at the sedentary level that did not involve working around hazardous machinery or unprotected heights. In response to a hypothetical query posed by the ALJ at the hearing, the VE testified that an individual with this RFC and Plaintiff's vocational characteristics could not perform Plaintiff's previous jobs but could perform the requirements of other sedentary jobs, including the jobs of surveillance system monitor, unskilled bench assembly worker, or hotel restaurant order clerk. (TR 324-325). In response to another hypothetical inquiry posed by the ALJ as to the availability of jobs for an individual who would need to be absent from the work station due to falling asleep three or four times a day for 15 to 30 minutes, the VE testified that such an individual would not be able to perform any jobs available in the economy. (TR 325).

      Plaintiff stated that he had undergone surgery in 2000 performed by Dr. Bell to relieve glaucoma in his right eye and that, despite the surgery and wearing eyeglasses, his vision in his right eye was impaired. (TR 87-88, 90). Plaintiff informed the consultative physical examiner, Dr. Saidi, in August 2007 that his vision was "blurry." (TR 271). However, Dr. Saidi noted in his report of the consultative examination that Plaintiff's visual acuity was

only slightly less than normal with his eyeglasses. (TR 272). Moreover, the medical record does not indicate that Plaintiff sought treatment for impaired vision. Accordingly, there is substantial evidence to support the absence of a right-eye vision impairment in the ALJ's RFC finding.

Plaintiff further contends that the ALJ did not provide an adequate explanation for rejecting as not credible Plaintiff's assertion that his narcolepsy impairment caused him to fall asleep without warning. The medical record shows that Plaintiff sought treatment in October 2005 for "a long history of excessive daytime somnolence." (TR 233). Plaintiff underwent a sleep study and was diagnosed by Dr. Schwartz, a sleep disorder specialist, with a "narcolepsy-like" illness, idiopathic hypersomnia. (TR 233). Medication was prescribed for this condition. (TR 233). Plaintiff reported four days later that the medication was not helpful with his daytime somnolence and caused nausea, and the medication was adjusted. (TR 230, 231). Plaintiff reported a month later that despite the medication he was still sleepy during the daytime. (TR 226, 228). Plaintiff's medication for his sleeping disorder was adjusted two more times. (TR 225, 226). In January 2006, Dr. Shwartz noted Plaintiff's report that he had experienced improvement in his daytime alertness, and his medications were continued. (TR 224). In July 2006, Dr. Schwartz noted Plaintiff returned for a follow-up appointment and reported the stimulant medication previously prescribed for his sleeping disorder, Desoxyn, was "the most effective medication in improving daytime alertness." (TR 223). This medication was continued. (TR 223). There is no further record of treatment of Plaintiff by Dr. Schwartz. However, Plaintiff testified at the hearing that he had a follow-up

7

appointment with Dr. Schwartz in 2007 and Dr. Schwartz continued Plaintiff's medication. (TR 320-321). Nevertheless, Plaintiff reported to his treating workers' compensation physician in August 2007 that his narcolepsy symptoms were "getting worse" and the Desoxyn was "not as effective," and he asked the physician to complete a form to accompany an application for disability benefits. (TR 294). At his hearing, Plaintiff testified that the narcolepsy medication kept him awake during the daytime for "[m]aybe" two or three hours at a time but that he fell asleep without intent "sometimes" or two to three times a day. (TR 317, 321). He stated he had "wrecked four cars" due to "falling asleep." (TR 318).

Plaintiff reported to the consultative examiner, Dr. Saidi, that he was recently divorced, lived with his sister, and had two children, a thirteen-month-old son and a five-year-old daughter. (TR 272). According to Plaintiff's statements in the record, he cared for his children while his ex-wife worked although his sister helped with household maintenance and child care responsibilities. (TR 108, 121, 126).

The ALJ reasoned, in part, that Plaintiff's allegation of disabling impairments was not credible because Dr. Schwartz, his treating sleeping disorder specialist, had not placed any limitations on Plaintiff's ability to work. The ALJ recognized that a primary care physician who treated Plaintiff, Dr. Dycus, beginning in August 2003 concluded in October 2006 that Plaintiff continued to be disabled from his occupation as a truck driver because his narcolepsy restricted him from driving. (TR 243). Dr. Dycus noted that Plaintiff's prognosis for a return to his former employment as a truck driver was "fair to poor." (TR 244). The ALJ also recognized in the decision that the agency's medical consultants who reviewed the

medical record found Plaintiff was capable of performing the requirements of sedentary work not involving exposure to unprotected heights or hazardous machinery. (TR 23-24). The ALJ reasoned that the RFC finding was supported by the evidence in the record showing

> [Plaintiff] has basically not had any permanent limitations or restrictions placed on his ability to perform basic work activities. [Plaintiff] was released to return to work after his coronary artery bypass grafting and sternotomy incision revision on January 3, 2005 .... [Plaintiff] did work some and had some on-the-job injuries in 2005. [Plaintiff] has been treated for narcolepsy and has improved his daytime alertness with Desoxyn. [Plaintiff] has mild chronic obstructive pulmonary disease but has not ceased smoking.

(TR 24). There is substantial evidence in the record to support the ALJ's RFC finding. Although Plaintiff contends that the medication prescribed for his narcolepsy, Desoxyn, did not wholly resolve his daytime symptoms, Plaintiff admitted that the medication was helpful in providing him with multiple hours of daytime alertness. Also, Plaintiff did not seek further treatment for his narcolepsy after reporting that Desoxyn was helpful in reducing his daytime sleepiness, and he returned to his treating sleeping disorder specialist only for annual follow-up appointments in 2007 and 2008. The ALJ's RFC finding is consistent with the medical record as a whole and with the assessments of the agency's medical consultants. In light of the VE's testimony at the hearing, there is substantial evidence in the record to support the ALJ's step five finding. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      February 1st      , 2010, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

  ENTERED this      11th      day of      January      , 2010.

*[signature]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE